In the Matter of the Application of THE NEW YORK CENTRAL RAILROAD COMPANY, Petitioner, to Review a Determination of and for an Order against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, and MILO R. MALTBIE and Others, as Public Service Commissioners of the State of New York, Being Members of Said Commission, Respondents.

Third Department, July 11, 1939.

*Clive C. Handy* [*William R. Stevens* of counsel], for the petitioner.

*Gay H. Brown, Attorney for Public Service Commission* [*Laurence J. Olmstead* of counsel], for the respondents.

BLISS, J.   On December 20, 1932, the Public Service Commission directed the New York Central Railroad Company to continue the operation of its train No. 12 between the villages of Chatham, Columbia county, and Brewster, Putnam county.   In November, 1937, the railroad petitioned to discontinue the operation of this train and that the order of December 20, 1932 be rescinded.   This application was denied and the previous order was in all respects affirmed by the commission.

Train No. 12 on the Harlem division of the New York Central Railroad leaves Chatham daily at five-twenty-five A. M. and runs southerly to Brewster, arriving at eight-fourteen A. M., a distance of seventy-six miles.   Its equipment is usually a gasoline rail motor

car with a seating capacity of forty-five persons. On occasion a steam locomotive with a baggage car and coach is substituted. The train makes fourteen regular station stops and at ten stations stops on signal only. The last twelve miles of this run is between Pawling and Brewster. The train leaves Pawling at seven-thirty A. M., stops at all stations between there and Brewster, arriving at Brewster as above noted at eight-fourteen A. M. Another train, No. 10, leaves Pawling at seven-forty A. M., arriving at Brewster at eight A. M. and continues on to New York city, arriving there at nine-twenty-six A. M. Train No. 10 also stops at all stations between Pawling and Brewster, thus duplicating at the same hour of the day the operation of train No. 12 between Pawling and Brewster. This connection also provides a means for passengers coming down from stations north of Pawling to connect with train 10 and thus continue their journey on to New York. No inconvenience to passengers from Pawling south would be caused by the discontinuance of train No. 12.

A summary of the passengers transported on this train in 1937 between August ninth and December thirty-first shows that the number of passengers carried per day ranged between 20.2 in August and 32.4 in September. The number of passengers boarding the train north of Pawling ranged between 15.3 average per day in November and 19.2 average per day in August. A large percentage of the passengers boarding the train at Pawling or at stations south thereof were school children traveling from Towners to Brewster, a distance of six miles, all of whom could have received practically the same service by riding on train No. 10 some fourteen minutes earlier. In addition to train No. 12 there are three scheduled trains leaving Chatham daily at one-ten, two-twenty-three and six-twenty-five respectively and offering similar service to New York city.

The proof of the railroad also showed that the average loss per year from the operation of this train, beginning with the year 1934 and including the year 1937, was $9,131.14, with a total loss during that period of $36,524.58. For the five-year period ending with 1936 the New York Central Railroad as a whole showed that its net income after fixed charges amounted to an average yearly deficit of $4,460,605, and from January 1, 1932, to October 31, 1937, its net income, including leased lines, consisted of a deficit of $14,895,585. Not only was this particular train being operated at a considerable loss, but the system as a whole was also operating at a large loss. In view of these circumstances the reasons which should compel a railroad to continue to operate a train at a substantial loss, especially when the entire system is also losing money, must be very strong. That there is no substantial demand on the

part of the communities served by this train for its continuance is best shown by the small number of passengers who have availed themselves of its facilities.

Those objecting to the discontinuance of the train consisted principally of public officials and other individuals living along the line, many of whom made practically no use of the train themselves. While it is true that there is no bus line paralleling the railroad in much of this territory, this is due in all probability to the fact that no such bus line could exist on the meager patronage enjoyed at this particular time of day by the only carrier through this area. The record gives some individual instances of persons who would be somewhat inconvenienced by the discontinuance of this train. There is, however, no substantial public demand for the train especially as evidenced by the patronage which it now enjoys, and the public as a whole would not be inconvenienced by its removal. To compel the railroad to continue operation in the face of the heavy losses shown and the absence of public demand, amounts to a violation of its constitutional rights. Under all of these circumstances the order of the Commission was unreasonable and should not be allowed to stand. The proof does not warrant the conclusion that a substantial injury would result from the discontinuance of this train.

The orders should, therefore, be annulled.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur.

Order annulled, with fifty dollars costs and disbursements.